# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAHLON CONRAD HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-CV-0284-CVE-FHM |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 23) of Magistrate Judge Frank H. McCarthy recommending that the Court reverse the decision of the administrative law judge (ALJ) to deny plaintiff Mahlon Conrad Henderson's claim for disability benefits, and remand the case for further consideration and discussion of the opinion evidence. Defendant has filed an objection to the report and recommendation (Dkt. # 24), arguing that the ALJ reasonably considered evidence from the doctors at issue and cited medical evidence that supports his assessment of plaintiff's physical and mental residual functioning capacity (RFC).

## I.

In January 2014, plaintiff filed an application for disability insurance benefits. Dkt. # 14, at 156-57. Plaintiff has a high school education and is a former customer service representative. Id. at 46, 75. Plaintiff claims that he has been unable to work since November 1, 2013 as a result of a seizure disorder, status post-removal of a pituitary tumor, an anxiety disorder, and problems

with memory and concentration. Id. at 43-45. Plaintiff's application for disability benefits was denied initially and on reconsideration. Id. at 89-93, 98-100.

A hearing was held before an ALJ on November 3, 2015. Id. at 22. Included in the record before the ALJ were the medical opinions of plaintiff's treating neurologist, Jeremy Salas, M.D., and consultative psychologist, Nancy Barton, M.D.

The record indicates that Dr. Salas began treating plaintiff on August 1, 2014. Id. at 342. After the initial consultation, Dr. Salas stated in a neurology consultation note that he was concerned about the exact type and dosage of medication plaintiff was taking; however, he noted that plaintiff did not have the funds to afford any medication other than the medication he was taking at that time. Id. Dr. Salas stated that he would order an EEG to help determine what type of seizures plaintiff was having, an MRI of the brain to evaluate for any residual scar tissue from his surgery or radiation, and neuropsychological testing to better evaluate plaintiff's concerns about his cognitive impairment. Id. at 342-43. Shortly thereafter, on August 7, 2014, Dr. Salas stated that he had obtained an MRI of plaintiff's brain showing right frontal lobe encephalomalacia and adjacent gliosis. Id. at 309, 344. He also stated that an EEG captured three electrographic seizures from the right frontal region over a twenty minute period; he noted that plaintiff did not have outward symptoms and did not realize he had a seizure. Id. at 309. Dr. Salas opined that it was possible that the seizures are in part responsible for his difficulty maintaining concentration in conjunction with his prior frontal lobe injury. Id. Dr. Salas also opined, however, that it was not clear whether the medications were impairing his cognition or memory, and that it would be "very difficult to determine whether medications [were] having a beneficial effect on his seizures as many of them d[id] appear to be non-convulsive." Id.

On November 4, 2014, Dr. Salas noted that he had increased the dosage and frequency of plaintiff's medications. Id. at 345. In a progress note on March 2, 2015, Dr. Salas stated that subclinical seizures were captured on a routine EEG and he suspected that plaintiff was suffering from frequent simple partial or complex partial seizures. Id. at 346. He noted, again, that plaintiff's medication choices were limited by lack of insurance or funds, and he started plaintiff on a trial of a new medication. Id. Also on March 2, 2015, Dr. Salas completed a mental residual functional capacity assessment, in which he opined that plaintiff has severe limitations in his abilities to understand and remember detailed instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to make simple work-related decisions; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Id. at 315-16. Further, Dr. Salas opined that plaintiff has marked limitations in his abilities to remember locations and work-like procedures; to maintain attention and concentration for extended periods; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to accept instructions and respond appropriately to criticism from supervisors; to maintain socially appropriate behavior and to adhere to basic standards or neatness and cleanliness; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. Id. Dr. Salas opined that plaintiff has limited ability to function in a work environment due to his frontal lobe brain injury and seizures, as well as problems with concentration, attention, emotional control, and memory. Id. at 317.

On June 1, 2015, Dr. Salas stated that plaintiff had an adverse reaction of increased anger to the new medication he had started in March; thus, the medication was discontinued. Id. at 347. Dr. Salas started plaintiff on another new medication. Id. On September 14, 2015, Dr. Salas stated that plaintiff was no longer having "spacing out episodes" since the addition of the new medication; however, he had a great deal of difficulty concentrating and mild fatigue that coincided with the start of the medication, as well as increased irritability. Id. at 348. After obtaining a laboratory report to check levels in liver function tests and "chem eight," Dr. Salas took plaintiff off of the new medication. Id. at 349. Dr. Salas opined that, if taking plaintiff off of the new medication resolved the side effects of mood changes and fatigue, they would need to consider a different medication once again. Id. at 348.

The record before the ALJ also included a mental status evaluation completed by Dr. Barton on May 3, 2014. Id. at 288-97. Dr. Barton opined that plaintiff's auditory recall and recognition were both impaired, and noted that he had difficulty with attention and concentration during the evaluation. Id. at 295-96. Dr. Barton concluded that, based on her limited time with plaintiff, plaintiff was likely able "to understand and socially interact in a work environment but his ability to remember, sustain concentration, persist, and adapt seem[ed] compromised at th[at] time." Id. at 296. Dr. Barton also opined that plaintiff was "not capable of managing his own financial affairs at th[at] time." Id.

On January 13, 2016, the ALJ entered a decision in which he determined that plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he requires seizure precautions, in that he cannot work around hazards such as height or open machinery, and he is limited to simple, repetitive tasks. Id. at 29. As to Dr. Salas's medical

4

opinions, the ALJ stated that he had given them careful consideration, but found "they are entitled to some, but not controlling weight." Id. at 33. The ALJ stated that "[t]he doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported, rather than objective findings." Id.

The ALJ also concluded that "the evidence shows that since the alleged onset of disability the claimant's seizures have been relatively well controlled with medication." Id. at 30. In reaching this conclusion, the ALJ relied on certain medical opinions and facts contained in Dr. Salas's notes, but omitted any reference to other medical opinions and facts contained in those notes. Specifically, the ALJ relied on Dr. Salas's opinion that, on August 1, 2014, plaintiff's seizures were under fairly good control, but that plaintiff had been taking his medications inappropriately and was having problems with concentration and maintaining employment. Id. at 31. The ALJ also relied on Dr. Salas's opinion that plaintiff had normal neurological exams in November 2014 and March 2015. Id. Further, although the ALJ relied on plaintiff's statement that he had no recent seizure activity three months after Dr. Salas had increased his medications, the ALJ did not mention or consider Dr. Salas's opinion from that same day that, in fact, the EEG showed epileptiform activity and brief subclinical seizure activity. Id. at 31, 345. Moreover, although the ALJ relied on plaintiff's report from September 2015 that he did not have any "spacing out episodes" since starting another new medication in June 2015, the ALJ failed to mention the fact that Dr. Salas took plaintiff off of the new medication after reviewing a lab report due to plaintiff's adverse reactions in terms of mood changes and fatigue. Id. at 31, 348-49. In addition, the ALJ's decision does not address with any specificity any of Dr. Salas's opinions provided in his mental RFC assessment.

5

As to Dr. Barton, the ALJ stated that he gave "significant weight" to her opinions. Id. at 33. However, the ALJ's decision does not mention Dr. Barton's opinion that plaintiff was not capable of managing his own financial affairs.

Plaintiff requested review of the ALJ's adverse decision by the Appeals Council, but the Appeals Council found no basis under its rules to revise the decision. Dkt. # 14, at 5-10, 19-21. Plaintiff filed this case seeking judicial review of the ALJ's decision, asserting that the ALJ committed reversible legal error by failing to properly evaluate the medical opinions. Dkt. # 2. The matter was referred to a magistrate judge for a report and recommendation. The magistrate judge recommended that the case be reversed and remanded because the ALJ failed to properly address the doctors' opinions under the standards contained in the Commissioner's regulations.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

Defendant objects to the magistrate judge's recommendation to reverse and remand this case for further consideration and discussion of the opinion evidence. Defendant argues that the ALJ

6

reasonably considered evidence from the doctors at issue and cited medical evidence that supports his assessment of plaintiff's RFC. Further, defendant criticizes the magistrate judge's reliance on Tenth Circuit case law interpreting the Commissioner's prior regulations for evaluating medical opinions.

The Social Security Administration (SSA) has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." Id. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." Allen, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. See id. Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. See id.

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis. Dkt. # 14, at 29. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support

a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The Court must first address defendant's criticism of the magistrate judge's "reli[ance] on Tenth Circuit case law such as Watkins v. Barnhart, 350 F.3d 1297 (10th Cir. 2003), interpreting the Commissioner's prior rules for weighing medical source opinions . . . ." Dkt. # 24, at 5. Specifically, the magistrate judge relied on Tenth Circuit precedent interpreting the rules contained in 20 C.F.R. § 404.1527. First, the Court notes that § 404.1527, as amended on March 27, 2017, states explicitly that its rules apply "[f]or claims filed . . . before March 27, 2017." 20 C.F.R. § 404.1527. Plaintiff filed his claim for disability benefits in January 2014; thus, the rules in § 404.1527 apply here. Second, although Watkins and other Tenth Circuit precedent address prior versions of § 404.1527, the Court notes that the language regarding evaluation of a treating source's opinion has remained largely unchanged. Moreover, the Court finds persuasive the fact that,

8

following the March 27, 2017 amendment of § 404.1527, the Tenth Circuit has continued to rely on its precedent interpreting prior versions of § 404.1527. See Harrold v. Berryhill, 714 F. App'x 861, 865-69 (10th Cir. Oct. 31, 2017);[1] Kellams v. Berryhill, 696 F. App'x 909, 912, 917-18 (10th Cir. Aug. 10, 2017); Brownrigg v. Berryhill, 688 F. App'x 542, 548 (10th Cir. Apr. 19, 2017).[2] Thus, the Court finds it proper to rely on Tenth Circuit precedent in applying the rules for evaluating treating source opinions under § 404.1527.

In evaluating a treating source's opinion under § 404.1527, "'the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct.'" Brownrigg, 688 F. App'x at 548 (quoting Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011)). First, the ALJ must determine whether the medical opinion qualifies for "controlling weight." Id. A treating source's medical opinion is given controlling weight if, on the issues of the nature and severity of the plaintiff's impairments, the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(c)(2). Second, if the medical opinion is not entitled to controlling weight, the ALJ must "apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of [§ 404.1527], as well

---

[1] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 31.1; 10th Cir. R. 32.1.

[2] Coincidentally, also effective March 27, 2017, the SSA rescinded its ruling cited as S.S.R. 96-2p. The Court notes that the rescission of S.S.R. 96-2p does not impact the applicability of § 404.1527 to this case, nor does it impact the applicability of Tenth Circuit case law to the extent it interprets current language of § 404.1527. Further, the Court does not rely on any Tenth Circuit cases cited herein for their discussion of S.S.R. 96-2p; rather, the Court relies on those cases solely for their discussion of § 404.1527.

9

as the factors in paragraphs (c)(3) through (c)(6) of [§ 404.1527] in determining the weight to give the medical opinion."[3]  Id.

Here, the ALJ stated that he gave Dr. Salas's medical opinions "some, but not controlling weight." In determining that plaintiff's treating neurologist's opinions are not entitled to controlling weight, the ALJ did not articulate any assessment of whether Dr. Salas's medical opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."  See § 404.1527(c)(2). Further, even in determining that Dr. Salas's medical opinions are entitled to "some" weight, the ALJ did not mention the six factors for determining the weight to assign a medical opinion that is not given controlling weight, let alone "give good reasons, tied to th[ose] factors" for the weight assigned.  Krauser, 638 F.3d at 1330.  Rather, the ALJ's sole explanation for assigning "some, but not controlling weight" to the treating neurologist's opinions was his bare conclusion that Dr. Salas "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported, rather than objective findings."  The ALJ did not provide any explanation as to how he reached this conclusion, other than stating that plaintiff had normal neurological findings and that Dr. Salas did not request a neuropsychological test.  Even if normal findings on neurological examinations were indicative of mental abilities (which they are not), that would not justify the ALJ's decision to

---

[3]  Those factors are: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion."  Watkins, 350 F.3d at 1301.

discount the vast majority of Dr. Salas's medical opinions without any reference to the requirements for weighing opinion evidence under § 404.1527(c) and Tenth Circuit precedent. Further, the ALJ did not even attempt to explain why some of Dr. Salas's medical opinions (i.e., the opinions that supported the ALJ's conclusion) were entitled to some weight, while other of Dr. Salas's medical opinions (i.e., the opinions that contradicted the ALJ's conclusion) were discounted entirely.

Similarly, although the ALJ stated that Dr. Barton's opinions were entitled to "significant weight" (again, without any discussion of the two-step inquiry under § 404.1527(c)), the ALJ failed to mention, let alone give significant weight to, Dr. Barton's opinion that plaintiff is incapable of managing his own financial affairs.[4] Thus, the Court finds that the ALJ's consideration of plaintiff's treating doctors' opinions fails to satisfy the requirements for evaluating such opinions under § 404.1527(c) and Tenth Circuit precedent.

Moreover, although defendant argues that "the ALJ reasonably considered Dr. Salas's ultimate failure to pursue contemplated functional assessment as reflective of his lack of concerns in this regard, and thus inconsistent with his opinion as to Plaintiff's seizure disorder-related mental

---

[4] Defendant also argues that the magistrate judge erred in concluding that the ALJ did not explain how his assessment of plaintiff's RFC addresses Dr. Barton's opinion that plaintiff's ability to persist and adapt is compromised. Defendant does not argue that the ALJ did, in fact, take that opinion into consideration (in any case, such an argument would fail given that the ALJ did not discuss the impact of such compromised abilities on his determination of plaintiff's RFC). Rather, defendant argues that Dr. Barton's opinion is an "equivocal suggestion of limitations in these areas [and does] not quantify such limitations or characterize them as existing to a disabling extent." However, the ALJ himself determined that Dr. Barton's opinions are entitled to significant weight. Moreover, the ALJ did not state or suggest that Dr. Barton's opinion as to plaintiff's ability to persist and adapt is entitled to less weight than her other opinions because it does not quantify such limitations. Thus, the ALJ was required to give significant weight to all of Dr. Barton's opinions, and the Court does not consider defendant's post hoc justification for the ALJ's failure to do so. See Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

functioning," the ALJ did not explicitly provide this as an explanation in his decision, and the Court is not permitted to fill in the blanks for the ALJ. See Carpenter v. Astrue, 537 F.3d 1264 (10th Cir. 2008) ("Judicial review is limited to the reasons stated in the ALJ's decision . . . ."). Similarly, despite defendant's argument that the ALJ cited medical evidence that justifies the ALJ's decision as to the weight assigned to the treating doctors' opinions, the ALJ did not present such medical evidence as a justification for the weight he assigned to the doctors' opinions. In any case, even if the ALJ were to have provided such arguments as justifications for the weight assigned to the doctors' opinions, such justifications would not satisfy the requirements for evaluating opinion evidence under § 404.1527(c), especially because a treating source's medical opinion generally receives more weight than medical opinions from other sources. § 404.1527(c).

The Court has reviewed the transcript of the hearing before the ALJ and the ALJ's written decision, and finds that the ALJ failed to adequately assess the opinions of plaintiff's treating doctors. The case will be reversed and remanded for an evaluation of the treating doctors' opinions in accordance with the legal standards established by the Commissioner and the courts.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 23) is **accepted**, and the Commissioner's decision to deny plaintiff's application for disability benefits is **reversed and remanded**. A separate judgement is entered herewith.

**DATED** this 7th day of September, 2018.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE